STATE, *et al.*, v. CITY OF WÁUCHULA.

188 So. 365.
Opinion Filed April 25, 1939.

*W. W. Whitehurst,* for Appellants;

*Carver & Langston* and *Latimer C. Farr,* for Appellee.

BUFORD, J.—Appeal brings for review decree validating $33,000.00 in electric revenue certificate under the provisions of Ordinance No. 230 of the City of Wauchula, Florida. The Ordinance, pursuant to its number and title, the sufficiency of which is not questioned here, is as follows:

"BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF WAUCHULA, in the County of Hardee, State of Florida:

"Section 1. It is hereby ascertained, determined and declared that:

"(a) The City of Wauchula, Florida, (hereinafter called the 'City') now owns, operates and maintains an electric light and power system, (hereinafter called the 'System').

"(b) The net revenue of such System during the last four fiscal years has amounted to the following sums:

| Fiscal Years Ending | Net Revenue |
| --- | --- |
| October 31, 1935 | $18;111.32 |
| October 31, 1936 | 18,258.19 |

| | |
|---|---|
| October 31, 1937 | 17,919.88 |
| October 31, 1938 | 21,979.22 |

and the revenue of said System has not been pledged either in whole or in part to the payment of any outstanding bonds or other obligations of the City. The estimated net revenue of said System in each fiscal year, after the construction of the improvements and extensions to said system hereinafter referred to, is in excess of the amount to become due in such fiscal year for principal and interest on the Certificates hereinafter provided for.

"(c) It is necessary and desirable to construct, and there is hereby authorized to be constructed, improvements and extensions to said electric light and power system (hereinafter called the 'Project'), such Project to consist of an additional Diesel Generator and additions and changes to electric distribution line according to plans and specifications prepared by C. K. Dodd, Engineer, and now on file with the City Clerk of the City of Wauchula. The estimated cost of constructing the Project is $52,000.

"Section 2. To aid in financing the construction cost of the Project, in excess of the grant to be made to the City of Wauchula by the United States of America, the City Council of the City of Wauchula hereby authorizes the issuance of Electric Revenue Certificates of the City of Wauchula (hereinafter called the 'Certificates') in the aggregate principal amount of $33,000.

"The Certificates shall be dated December 1, 1938, shall be in the denomination of $1000. each, shall be numbered in order of their maturity from 1 to 23, both inclusive, shall bear interest at the rate of four per centum (4%) per annum, payable semi-annually on June 1 and December 1 in each year from the date thereof until maturity; shall be payable as to both principal and interest at the office

of the City Clerk in the City of Wauchula, Florida, in such coin or currency as is, on the respective dates of payment of the principal thereof and interest thereon, legal tender for the payment of public and private debts; shall be in coupon form; and shall mature serially on December 1 in the years and amounts as follows:

| Year | Amount | Year | Amount |
|------|--------|------|--------|
| 1940 | $2000 | 1945 | $4000 |
| 1941 | 2000 | 1946 | 4000 |
| 1942 | 3000 | 1947 | 4000 |
| 1943 | 3000 | 1948 | 4000 |
| 1944 | 3000 | 1949 | 4000 |

"The Certificates shall be executed on behalf of the City of Wauchula by its Mayor, and shall be sealed by the corporate seal of said City and shall be attested by the City Clerk of said City, and the interest coupons thereto attached shall bear the facsimile signature of said Mayor and said City Clerk.

"Section 3. The Certificates and coupons attached thereto shall be substantially in the following form, to-wit:

"No.                                                    $100

"UNITED STATES OF AMERICA
"STATE OF FLORIDA
"COUNTY OF HARDEE
"CITY OF WAUCHULA
"ELECTRIC REVENUE CERTIFICATE

"The City of Wauchula in the County of Hardee, a municipal corporation of the State of Florida, for value received, hereby promises to pay to bearer, solely from the sinking fund provided therefor, as hereinafter set forth, and not otherwise, the principal sum of ONE THOUSAND DOLLARS ($1000.00) on December 1, 19____, and to pay

on said principal sum, solely from the sinking fund provided therefor, as hereinafter set forth, and not otherwise from the date hereof at the rate of four per centum (4%) per annum, payable semi-annually on June 1 and December 1 in each year upon the presentation and surrender of the interest coupons attached hereto as they severally become due, until the maturity of this certificate. Both the principal of and the interest on this certificate are payable at the office of the City Clerk in the City of Wauchula, Florida, in such coin or currency as is, on the respective dates of payment thereof, legal tender for the payment of public and private debts.

"This certificate is one of a duly authorized issue of certificates limited to an aggregate principal amount of $33,000, of like tenor and effect except as to number and maturity, is issued pursuant to and in full compliance with the Constitution and Statutes of the State of Florida, particularly the Charter of the City of Wauchula, and by virtue of an Ordinance entitled 'An Ordinance Providing for the Construction of Improvements and Extensions to the Electric Light and Power System of The City Wauchula, Florida, and for the Issuance of Revenue Certificates of the City of Wauchula in the Amount of $33,000, Payable Solely from the Revenues Derived from the Electric Light & Power System, of Said City, to Finance the Cost of Such Construction,' duly adopted by the City Council of said City of Wauchula on November 25, 1938, and said Ordinance is hereby referred to and, as to all of its terms and provisions, is made a part of this certificate.

"This Certificate and the issue of which it is one are issued to aid in financing the cost of construction of improvements and extensions to the electric light and power system of the City of Wauchula, and are payable only from a sinking fund in which there shall be set aside annually,

in approximately equal monthly installments, out of the revenues and income derived from the operation of the electric light and power system of the City of Wauchula, after provision for the payment of all costs of operation, maintenance and repairs, such sums as shall be sufficient for the payment of interest on and the principal of said certificates as the same respectively shall become due, and this certificate, together with all of the certificates of the issue of which this Certificate is one, and the interest thereon, are secured by a pledge of and exclusive first lien upon all revenues set aside in said sinking fund, all as in said Ordinance provided. This Certificate and the interest thereon are not payable from nor are a charge upon any funds other than the revenues pledged to the payment thereof and shall not impose any tax liability upon any real or personal property in the City of Wauchula, nor constitute a debt against said City.

"This Certificate and the coupons attached hereto are issued upon the following terms and conditions, to all of which each holder and the owner hereof consents and agrees:

"(A) Title to this Certificate, and to the coupons attached hereto may be transferred by delivery in the same manner as a negotiable instrument payable to bearer; and

"(B) Any person in possession of this certificate or of the coupons attached hereto, regardless of the manner in which he shall have acquired possession, is hereby granted power to transfer title hereto by delivery thereof to a bona fide purchaser, that is, to any one who shall purchase the same for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his transfer or; every prior holder or owner of this certificate, and the coupons attached hereto waives and renounces all of his equities or rights therein in favor

of every such bona fide purchaser, and every such bona fide purchaser shall acquire absolute title thereto and to all such rights represented thereby; and

"(C) The City of Wauchula may treat the bearer of this Certificate, or of the coupons attached hereto, as the absolute owner thereof for all purposes, without being affected by any notice to the contrary.

"IT IS HEREBY CERTIFIED, RECITED AND DECLARED that all acts, conditions and things required by the Constitution and Statutes of the State of Florida and by the ordinances of the City of Wauchula, to exist, to happen and to be performed, precedent to and in the issuance of this certificate, do exist, have happened, and have been performed in due time, form and manner as required by law.

"IN WITNESS WHEREOF, the City of Wauchula, in the County of Hardee, State of Florida, has caused this certificate to be executed in its name by its Mayor, and its corporate seal to be hereunto affixed and to be attested by its City Clerk, and the interest coupons hereto attached to be executed by its Mayor and City Clerk with their facsimile signatures, all as of the first day of December, 1938.

"CITY OF WAUCHULA

"(SEAL)      By_____

"Attest:                      "Mayor

_____

"City Clerk

(VALIDATION ENDORSEMENT)

"Validated and confirmed by decree of the Circuit Court of the Tenth Judicial Circuit of Florida, in and for Hardee County, Rendered on the___day of__._____, 193__.

"_____

"(SEAL)      "Clerk of the Circuit Court in and for Hardee County, Florida.

380

(Form of Coupon)

"No.                                                          $20.00

"On the first day of_____, 19___, The City of Wauchula will pay to the bearer hereof solely from the revenues pledged to the payment hereof and not otherwise, at the office of the City Clerk in the City of Wauchula, Florida, $20.00 in such coin or currency as is, on the date of payment hereof, legal tender for the payment of public and private debts, being six months interest on its Electric System Revenue Certificate dated December 1, 1938, and numbered

"_____
                                              "Mayor

"_____
          "City Clerk.

"Section 5.   The Mayor is hereby authorized to execute the certificates in the name of the City, and the City Clerk is hereby authorized and directed to affix the seal of the City to the certificates and attest such seal.   The Mayor and the City Clerk are hereby authorized and directed to cause the coupons attached to said certificates to be executed by their facsimile signatures.   The certificates herein authorized shall be, and they are hereby awarded to the United States of America acting through the Federal Emergency Administrator of Public Works at par and accrued interest, and the Mayor is hereby authorized and directed to deliver the certificates to the purchaser thereof, at one time or from time to time as he may deem advisable, upon receipt of payment therefor.

"Section 6.   The certificates and the interest thereon shall be payable from a sinking fund provided therefor, as hereinafter set forth, and not otherwise, and shall be secured by a pledge of and· exclusive first lien upon, all

revenues set aside in said sinking fund. Nothing in this ordinance shall be deemed to create any encumbrance, mortgage, or other pledge of or charge upon any property of funds of the City, other than the revenues pledged to the payment of the certificates as herein provided, nor to impose any tax liability upon any real or personal property in said City nor to constitute a debt against said City.

"Section 7. The methods of receipts and disbursements of the gross revenues and income derived from the operation of the System shall be as follows:

"The System shall be operated on a fiscal year basis, commencing the first day in November in each year and ending on the 31st day of October next following. From and after the effective date of this Ordinance, the City shall pay all of the revenues and income derived and obtained from the operation of the System into a special fund to be known as the "Electric System Revenue Fund" (Hereinafter called the 'Revenue Fund'). In the event that the City or any Department, agency or instrumentality thereof shall avail itself of the facilities or services rendered by the System, the reasonable value of the facilities or services so rendered shall be charged against the City of such department, agency, or instrumentality and shall be paid for as such charges accrue; but nothing in this Ordinance shall be construed as requiring the City or any department, agency or instrumentality thereof to avail itself of the facilities or services rendered by the System.

"The revenues received from the City or any department, agency or instrumentality thereof shall be deemed to be revenues derived from the operation of the System and shall be deposited in the Revenue Fund. The City hereby covenants that said Revenue Fund will be administered, held and applied by it until all the certificates and the interest thereon and the interest on any unpaid installments

of interest shall have been fully paid and discharged only for the purpose and in the manner following:

"(a) Into a separate account to be known as the 'Electric System Operation, Maintenance and Repair Account, there shall be paid each fiscal year in approximately equal monthly installments an amount sufficient for the purpose of paying all reasonable expenses of operation, maintenance and repair of the System for such month. The monies in said Account shall be used solely for the purpose of paying the reasonable expenses of operating, maintaining and repairing the System. · If in any month, for any reason the City shall fail to pay the above required amount into said Account, then an Amount equal to any deficiency in the amount paid into said Account in such month shall be added to the amount otherwise required to be paid into the Account in the next succeeding month.

"(b) Into a separate account to be known as the 'Electric System Sinking Fund' (hereinafter called the 'Sinking Fund') there shall be paid during each year in approximately equal monthly installments after making the above required payments into the Electric System Operation, Maintenance and Repair Account, such amount as is required to pay (1) a sum equal to one hundred per centum (100%) of the principal of the certificates maturing during the next succeeding fiscal year, (2) a sum equal to one hundred per centum of the interest becoming due in such next succeeding fiscal year on all outstanding certificates, and, in addition, in order to provide and continuously maintain a reserve in the Sinking Fund, (3) a sum at least equal to twenty per centum (20%) of the aggregate of the amounts defined by (1) and (2); payment of the additional amount defined by (3) shall be made, continued and recontinued until there is, and in order that out of all funds available for the purpose there may always be

maintained in said Sinking Fund an amount equal to the aggregate of the amounts defined in (1) and (2) plus all the principal and interest payments maturing and becoming due during the next two fiscal year referred to in (1) and (2) above; no payment need be made into the Sinking Fund when and so long as the amount in said Sinking Fund is at least equal to the aggregate principal amount of certificates then outstanding, plus the amount of interest due and thereafter to become due on said certificates; but if, in any month for any reason, the City shall fail to pay into said Sinking Fund the amounts herein required then an amount equal to any deficiency in the amount paid into said Sinking Fund in such month shall be added to the amount otherwise required to be paid into said Sinking Fund in the next succeeding month; any monies at any time paid into the Sinking Fund shall be held by the City in trust for the benefit of the holders from time to time of the certificates and coupons attached thereto entitled to be paid from such money, and the City shall not have any beneficial right or interest in any such monies. All monies in said Sinking Fund shall be deposited in a bank or banks which are members of the Federal Deposit Insurance Corporation and all sums in excess of an amount sufficient to discharge all principal and interest payments to become due within the next twelve months period shall be continuously secured by direct obligations of the United States of America or other securities approved by the Federal Reserve Board for the securing of trust deposits by national banks, which obligations or other securities shall be at all times at least equal in market value to the amount of monies in said Sinking Fund to be secured; the monies in said Sinking Fund shall be used solely for the purpose of paying the principal of and/or interest on the certificates and for no other purpose.

"Section 8. Any funds remaining in the Revenue Fund, after provision for the reasonable cost of operating, maintaining and repairing the System, and after paying the amount required to be paid into the Sinking Fund, as above provided, may be used by the City for the purchase of certificates at not exceeding the principal amount thereof (exclusive of accrued interest), or for any other purpose permitted by law. The City hereby covenants and agrees with the several holders and owners of certificates as follows:

"(a) That it will not voluntarily create or cause to be created any debt, lien, charge or encumbrance upon any of the revenues pledged to the payment of the certificates and the interest thereon except such as may be junior to the lien of said certificates, and that it will not sell, mortgage, lease or otherwise dispose of or encumber any property essential to the proper operation of the System;

"(b) That it will at all times preserve and protect the security of the certificates and the rights of the certificates holders under this Ordinance and that it will at all times maintain, preserve and keep, or cause to be maintained, preserved and kept, the System, including all parts thereof and appurtenances thereto in good repair, working order and condition, and will from time to time make or cause to be made all necessary and proper repairs and replacements so that at all times the business carried on in connection therewith may be properly and advantageously conducted in a manner consistent with prudent management;

"(c) That it will at all times prescribe and collect rates in connection with the System as it may deem reasonable, which said rates shall be at least sufficient after making reasonable allowances for contingencies and for a margin of error in the estimates to maintain the Electric System

Operation, Maintenance, and Repair Account and the 'Sinking Fund' as provided by this Ordinance;

"(d) That it will at all times keep proper books of record and accounts (separate from all other records and accounts) in which complete and correst entries shall be made of all transactions relating to the System. The City will furnish to the original purchaser or purchaser of said certificates, and to any holder or holders of any of said certificates, at the written request of such holder or holders, not more than thirty days after the close of each six months fiscal period, complete operating and income statements of the System in reasonable detail covering such six months period, and not more than sixty days after the close of each fiscal year, complete financial statement of the System in reasonable detail covering such fiscal year, certified by the auditors of the City;

"(e) That it will maintain insurance on the System for the benefit of the holders of certificates issued under this Ordinance so long as any of such certificates or the interest thereon shall remain outstanding or be unpaid, or a kind and in an amount which usually would be carried by a private corporation operating a similar type of undertaking. The proceeds of any insurance, other than for loss of use and occupancy, shall be used only for (a) reconstruction, replacement or repairs, or (b) payments into the Sinking Fund. During any period of loss of use or occupancy, total or partial, resulting from risks and perils against which other insurance is or should be carried pursuant to this section, the proceeds of any such use and occupance insurance shall be paid to the Revenue Fund and shall be administered, held and applied for the same purposes and in the same manner as provided by this ordi-

nance for the use, disposition and application of the monies in such fund;

"(f)  That it will permit at all reasonable times so long as any of the certificates are outstanding, any holder or holders of twenty per centum (20%) in principal amount of such certificates then outstanding to inspect the System and all account and records thereof.

"None of the foregoing covenants shall be construed to require the expenditure by the City of any funds other than revenues received or receivable from the System.

"Section 9.  The rights and duties of the City and of the holders, of the certificates and coupons and the terms and provisions of this Ordinance may be modified or altered in any respect by ordinance of the City Council of the City of Wauchula with the consent of the holder or holders of seventy-five per centum (75%) in principal amount of all the certificates then outstanding, such consent to be evidenced by an instrument or instruments executed by such holder or holders and duly acknowledged or proved in the manner of a deed to be recorded, and such instrument or instruments shall be filed in the office of the City Clerk and shall be a public record.

"Section 10.  In any section, paragraph clause or provision of this Ordinance shall be held invalid, the invalidity of such section, paragraph, clause or provision shall not affect any of the remaining provisions of this Ordinance.

"Section 11.  All ordinances or parts of ordinances or resolutions inconsistent with this Ordinance are hereby repealed, rescinded and revoked to the extent only of such inconsistency.

"Section 12.  This ordinance shall be in full force and effect from and and after its approval by the Mayor or

from and after its becoming a law without the approval of the Mayor.

"PASSED AND ADOPTED by the City Council of the City of Wauchula in a special meeting on the 25th day of November, 1938.

> "(Sgd.) E. H. Posey
> "President, City Council.

"Under and pursuant of the author'ty of the City Charter, I hereby certify that the foregoing ordinance has been duly and legally adopted and the same is hereby transmitted to the Honorable Leslie Hord, Mayor of the City of Wauchula, under my seal for his approval at' Wauchula, Florida, this 25th day of November, 1938.

> "(Sgd.) L. M. Moseley

"(SEAL)                    "City Clerk, City of Wauchula, Florida."

The appellants present three questions for our consideration as follows:

"First Question: Has the City of Wauchula been granted the power by charter or applicable statute to erect, equip and maintain an electr'c distribution line outside of its corporate boundary for the purpose of supplying electricity to non-inhabitants of the City?"

"Second Quest'on: Does the power of the City to erect, equip and maintain an electric distribution line outside of its corporate boundary lines for the purpose of supplying electricity to non-inhabitants of the City ex'st as incidental to powers expressly granted?"

"Third Question: Does the creation of a surplus of electricity by improvements and extensions to an already existing electric light plant create an exception to the rule that a Municipality can exercise only those powers granted

388

in express words or fairly implied or incidental to those expressly granted, so as to authorize such municipality to construct, equip, and maintain an electric distribution line lying entirely outside its corporate boundary, for the purpose of disposing of such surplus electricity to non-inhabitants of the City?"

The validity of the certificates has heretofore been presented to the Circuit Court and on appeal to this Court and has been upheld. See Anderson v. City of Wauchula, opinion filed December 21, 1938, reported 185 Sou. 352. The decree of the Circuit Court was:

"The above and foregoing cause came on for hearing on petition for validation of a proposed issue of $33,000.00 certificates of indebtedness, by the City of Wauchula, Florida, for the improvement of electric plant and improvement and extension of electric lines for the disposal of electricity from such plant, there being present the solicitors for the City of Wauchula and W. W. Whitehurst, as attorney for A. C. Schenk, the taxpayer objecting to the validation of such certificates of indebtedness, and for himself, and the following proceedings were had:

"The ordinance and the various contracts and instruments authorizing and connecting with the said proposed issue were introduced in evidence by agreement of counsel without objection and thereafter certain witnesses testified for the City of Wauchula and no evidence was introduced by the State or the objecting taxpayers. Thereupon the cause was argued on the basis of the record as made and the matter was submitted to the Court for adjudication. There was no testimony introduced by the objecting taxpayers or the State and, therefore, the testimony of the witnesses for petitioner must be taken to be true.

"The evidence therefore establishes the following to be facts: The proceedings for the issuance of said certificates

are in all respects valid and properly had. The objection to the validation is that the certificates provide among other things for approximately $10,000.00 for the extension of electric lines, at least three-fourths of which expenditure for lines would be outside of the city limits of the City of Wauchula, Florida.

"The contention is that the city has no power to make such extensions beyond the city limits or to bond for such purposes and that even if such could be done it is of such a nature that it could only be done after a vote of the freeholders as provided for bond elections generally.

"The facts as established by the undisputed evidence are that the expenditures on the plant are proper and necessary and will result in a large saving because of more economical operation that is estimated to pay for the new equipment in approximately seven years. Likewise that the new equipment will be capable of producing a large surplus over the needs of the inhabitants of the City of Wauchula for a number of years because it is economically expedient to put in a larger unit at this time and allow the requirements to grow to it and hence that the city with the new equipment can supply the proposed outlying areas and make an estimated profit of $1,000 per year as a return on these liens proposed to be built outside of the city limits.

"This evidence is largely a matter of estimates, but there is no contradictory evidence and it must be taken as true. The situation is such, therefore, that the city, with the installation of this new equipment which it has to install anyway, finds itself in a position where it will have an oversupply of electricity which it can dispose of with a considerable profit to the City of Wauchula by extending the proposed lines to sell such surplus to purchasers outside of the city limits of Wauchula, Florida.

"It is further clear from the evidence that the major portion of the money derived from this issue would have to be spent by the City of Wauchula now, or soon hereafter, for the increase in and enlargement of the electric plant anyway and that money would have to soon be spent anyway for repairs on the primary lines from the plant to the city limits. The proposed present extension is a Federal aid project, of which this is the last opportunity of the City of Wauchula to avail itself and the government will give the city forty-five per cent of the cost of construction the estimated cost of which is in excess of $50,000.00, and loan the remaining fifty-five per cent at 4%. It is obvious, therefore that the total cost to the City of Wauchula of the present total extensions would be only a fractional part of the costs of the improvements, the Government paying a large part of such cost, and therefore it is apparent that by taking advantage of the present available Government aid, the City will be getting the entire work in the city limits and outside of the city limits for a sum much less in amount than it would be required to pay for the work which will have to be done within the city limits anyway and which will have to be paid by the city alone if not done as a part of this proposition. Hence, by availing itself of the Government aid project which can be done by issuing and validating the certificates involved here, the city will get the entire work done for less than it would get only that portion within the city limits done later.

"It is also clear from the facts that a part of the reason for the Government aid is the extension of these lines into the suburban areas and increased revenues to be derived therefrom. Consequently, from a financial standpoint and the benefit of the taxpayers of the city as a whole, it is unquestionably, from the evidence therefrom, the part

of wisdom to put in these extensions, including the outlying areas now and in the manner proposed, even if large additional profits were not derived therefrom, because of the saving on those portions of the project within the city limits. In addition, it is a matter for the city counsel of the City of Wauchula to determine the question of the reasonable necessity for and expediency of the various proposed improvements so long as there is no such clear abuse as would warrant the court's interfering with such discretion and no such abuse appears.

"The only question left, therefore, is the naked question of the right of the city, to make these expenditures for the extensions of the electric lines beyond the city limits. It is conceded that the proposition and the certificates would be valid and legal if all of the proposed expenditures were for improvements within the city limits. The Supreme Court of Florida has adopted the position that a Florida municipality owning a light plant and selling electricity owns it in a proprietary capacity as distinguished from a Governmental capacity, holding such municipality liable for damages, etc., in connection with such operations, which liabililty would not apply to governmental functions and the weight of authority unquestionably seems to hold that when a municipality has a surplus or possible surplus of some product of one of its proprietary activities it can dispose of that surplus beyond the municipal limits. It seems to be well settled by the great weight of authority that when a municipality has a surplus of electric current that it can extend service lines beyond the municipal limits and dispose of such electric surplus without any specific or special authority so to do. In such cases the authority is implied. I am inclined to the opinion that the provisions of the city charter of the City of Wauchula are broad enough to give it these powers specifically, but that if such

be not the case, the City of Wauchula undoubtedly, has implied power because of this surplus of electricity which it can dispose of beyond the city limits, if it does not need it for municipal purposes or for the proper servicing of its inhabitants with electricity.

"The only other contention seems to be that such certificates of indebtedness could not be issued without a vote of the people. However, this question has been raised and adjudicated adversely to the contention of such objections. An attack by a taxpayer was made on the City of Wauchula as to the right of the City of Wauchula to issue such certificates because there was no vote of the people and the Circuit Court held that no election was necessary and that these certificates are such that no election was necessary and the Supreme Court of Florida affirmed that decision.

"It is contended here, however, that it was not made to appear in that case that part of the work for which the expenditures were to be made was beyond the city limits of the City of Wauchula and that because of the fact that part of such work is beyond the limits of the City of Wauchula an election will be necessary. However, I do not see any distinction here. If the certificates of indebtedness are of such character that a vote of the freeholders is required, then an election would be necessary for the work done within the city limits and the Circuit Court and the Supreme Court of Florida would have been compelled so to have held and an election would have been necessary whether the work was within the city limits or without, but since the Courts have held that these are not the types of certificates of indebtedness which require an election and since it is apparent that the city has authority to do the work proposed to be done beyond the city limits, it could do such work and issue certificates of indebtedness

for it, the same as it could for the work within the city limits and consequently no election would be required.

"WHEREFORE this Court is of the opinion that under the record of this case the certificates of indebtedness described in the validation petition are legal and valid and should be validated.

"WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED as follows:

"1. That this Court has jurisdiction of the subject matter and of the parties to this cause, including all the citizens and taxpayers of the City of Wauchula, Florida, the petitioner herein.

"2. That there is no necessity for submitting the question of the issuance of the certificates of indebtedness in question to the electorate.

"3. That the certificates of indebtedness authorized by the resolution annexed to the petition of the City of Wauchula, Florida, has been duly authorized by said City and all matters, things, proceedings and conditions necessary to happen, be done, exist and be performed precedent to the issuance of said certificates of indebtedness have happened, been done, exist, and been performed in due time, form and manner according to law, and that the said certificates of indebtedness are hereby validated and confirmed and the validity thereof shall never hereafter be questioned or contested."

It was not necessary for the Circuit Court nor is it necessary for this Court to determine the questions presented by the Appellants. Neither of these questions go to the power of authority of the municipality to issue the certificates involved because under the findings of fact made by the Circuit Judge the certificates are proposed to be issued by the municipality for the primary purpose of improving

and extending its facilities for furnishing electrical current to its inhabitants. The proposed extension of a transmission line beyond its boundaries is an incidental and secondary matter which does not affect the validity of its certificates for the retirement of which no tax is even to be levied.. See West v. Town of Lake Placid, 97 Fla. 127, 120 Sou. 361; City of Tampa v. Solomonson, 35 Fla. 406, 17 Sou. 581; Lewis v. Leon County, 91 Fla. 118, 107 Sou. 146.

The question of the power of the municipality to expend public funds in the construction of a transmission line beyond the corporate limits will be a proper one for judicial determination if and when such expenditure is undertaken and its answer must depend upon the law as it may be found to exist at that time.

The decree is affirmed without prejudice, however, to the appellants, or any other taxpayers, to question in proper judicial proceeding the power of the municipality to expend public funds for the construction or maintenance of transmission lines or other facilities beyond the corporate limits if and when an attempt is made by the municipal officers to do so.

So ordered.

TERRELL, C. J., and WHITFIELD, BROWN, CHAPMAN and THOMAS, J. J., concur.